1 | KATHY BAZOIAN PHELPS (State Bar No. 155564)
*kphelps@dgdk.com*
2 | AARON E. DE LEEST (State Bar No. 216832)
*adeleest@dgdk.com*
3 | DANNING, GILL, DIAMOND & KOLLITZ, LLP
1900 Avenue of the Stars, 11th Floor
4 | Los Angeles, California 90067
Telephone:   (310) 277-0077
5 | Facsimile:   (310) 277-5735

6 | Attorneys for Peter J. Mastan, Chapter 7 Trustee

7 |

8 | **UNITED STATES BANKRUPTCY COURT**

9 | **CENTRAL DISTRICT OF CALIFORNIA**

10 | **SAN FERNANDO VALLEY DIVISION**

11 | In re

12 | DAVID J. BEHREND,

13 |               Debtor.

Case No. 1:11-bk-11379-VK

Chapter 7

**FIRST INTERIM APPLICATION FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES BY DANNING, GILL, DIAMOND & KOLLITZ, LLP AS GENERAL COUNSEL FOR CHAPTER 7 TRUSTEE AND FORMER CHAPTER 11 TRUSTEE; DECLARATION OF KATHY BAZOIAN PHELPS IN SUPPORT THEREOF**

**[Chapter 11:  Covering the Period February 25, 2011 through March 23, 2011]**

**[Chapter 7:  Covering the Period March 24, 2011 through October 31, 2011]**

Date:       December 15, 2011
Time:       10:30 a.m.
Place:      Courtroom "301"
               21041 Burbank Blvd.
               Woodland Hills, CA 91367

24 |     Danning, Gill, Diamond & Kollitz, LLP ("applicant") presents its First Interim Application

25 | for Compensation and Reimbursement of Expenses as General Counsel for Chapter 7 Trustee (the

26 | "application") and the former Chapter 11 Trustee and respectfully represents as follows:

27 |

28 |

510793.1  25628                                    1

Case 1:11-bk-11379-VK    Doc 1011    Filed 11/23/11    Entered 11/23/11 15:11:04    Desc
Main Document    Page 2 of 32

1.    **Identity of the Applicant**

Applicant is Danning, Gill, Diamond & Kollitz, LLP, a limited liability partnership composed of professional corporations.

2.    **Nature of Representation**

Applicant represents Peter J. Mastan, the Chapter 7 trustee (the "Trustee") in this case, as his general counsel. Applicant also represented Peter J. Mastan in his former capacity as the Chapter 11 Trustee in this case as his general counsel.

3.    **The Employment of Applicant**

The order authorizing applicant's employment during the Chapter 11 case was entered on April 11, 2011, effective as of February 25, 2011. Exhibit "8." On April 28, 2011, the Court entered an order converting the Debtor's case to one under Chapter 7 of the Bankruptcy Code, effective as of March 24, 2011. The order converting the Debtor's case to one under Chapter 7 authorized the Trustee to continue applicant's employment as the Trustee's Chapter 7 general counsel. Exhibit "9."

4.    **Procedural Status and History of Case**

This case was commenced on March 25, 2010, (the "Petition Date"), when David J. Behrend (the "Debtor") filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Code").

On February 23, 2011, the Court entered an order directing the appointment of a Chapter 11 Trustee. On March 1, 2011, Peter J. Mastan was appointed as the Chapter 11 Trustee for the Debtor's estate.

On April 28, 2011, the Court entered an order converting the Debtor's case to one under Chapter 7 of the Bankruptcy Code, effective as of March 24, 2011. On May 9, 2011, Peter J. Mastan accepted appointment as the Chapter 7 Trustee for the Debtor's estate.

1    By orders of this Court, and as discussed in "L-4" below, the Trustee has sold substantially

2    all of the non-litigation assets of the estate.

3    However, the following issues still need to be resolved before this case can be closed:

4    1.    the Trustee is continuing his investigation into the estate's claims against Yevgeniya

5    Lisitsa and the Lisitsa Law Corporation as set forth in "L-6" below;

6    2.    the Trustee is continuing his investigation into the estate's claims against Stephen

7    Coaloa as set forth in "L-10" below:

8    3.    the Trustee may need to pursue avoidance power claims, including claims relating to

9    Sunset Creations as discussed in "L-5" below;

10    4.    the Trustee may need to sell or abandon additional assets;

11    5.    the Trustee may need to prosecute claim objections, where appropriate; and

12    6.    the Trustee will need to file federal and state income tax returns to reflect liquidation

13    of estate assets.

14    The Trustee presently holds approximately $744,473.64, of which at least $148,375.77 is

15    disputed funds. Kevin Moda has also filed a motion to void the Trustee's sale of a number of sales

16    of estate assets, which is set for hearing on December 13, 2011. Other than the clerk's costs, the

17    only other known accrued administrative expenses are the following: (a) the Trustee's fees and

18    costs, the former of which are subject to a statutory cap of approximately $40,450.00, based on

19    funds received to date; and (b) the fees and costs of the Trustee's accountants, which are estimated

20    at $122,621.40.

21

22    **5.    Prior Fee Applications and Payments to Applicant**

23    This is applicant's first interim application for compensation.

24    No retainer has been paid to applicant, and applicant has received no payments to date.

25    There is no provision or agreement for payment to applicant in this case except from this estate in

26    such sums as the Court may allow.

27

28

510793.1  25628                                                    3

6.      **Period Covered by This Application**

The Chapter 11 portion of this interim fee application covers the period from February 25, 2011 through March 23, 2011 (the "Chapter 11 subject period").

The Chapter 7 portion of this final fee application covers the period from March 24, 2011, through October 31, 2011 (the "Chapter 7 subject period").

7.      **Summary of Compensation Requested**

Applicant requests that the Court award it $577,157.50 for professional fees and reimbursement of costs totaling $28,646.73 for the Chapter 7 subject period and $77,982.00 for professional fees and reimbursement of costs totaling $2,381.31 for the Chapter 11 subject period. Applicant requests that the Court authorize the Trustee to pay the allowed fees and costs in for the Chapter 7 subject period up to the amount of $300,000 in fees and all of the allowed costs at his discretion in light of available funds, on an interim basis.

8.      **Summary of Services Rendered**

Attached hereto are the following exhibits to support this application:

| EXHIBIT | DESCRIPTION |
|---------|-------------|
| "1" | Detailed billing records of the time spent for the Chapter 7 Trustee by each professional for applicant for the Chapter 7 subject period, including a breakdown by activity code. |
| "2" | Detailed records of out of pocket expenses advanced for the Chapter Trustee by applicant during the Chapter 7 subject period. |
| "3" | Aggregate summaries of the fees and costs incurred for the Chapter 7 Trustee in this case during the Chapter 7 subject period. |
| "4" | Monthly summaries of the fees and costs incurred for the Chapter 7 Trustee in this case during the Chapter 7 subject period. |
| "5" | Detailed billing records of the time spent for the Chapter 11 Trustee by each professional for applicant for the Chapter 11 subject period, including a breakdown by activity code. |
| "6" | Detailed records of out of pocket expenses advanced for the Chapter 11 Trustee by applicant for the Chapter 11 subject period. |

| EXHIBIT | DESCRIPTION |
|---|---|
| "7" | Aggregate summaries of the fees and costs incurred for the Chapter 11 Trustee in this case during the Chapter 11 subject period. |
| "8" | Monthly summaries of the fees and costs incurred for the Chapter 11 Trustee in this case for the Chapter 11 subject period. |
| "9" | Detailed biographies of each of the professionals employed by applicant describing their professional qualifications. |
| "10" | A schedule of the hourly rates for the various professionals rendering services on this file. |
| "11" | A schedule of the rates for costs charged by applicant. |
| "12" | A copy of the order entered on April 11, 2011, authorizing applicant's employment. |
| "13" | A copy of the order entered on or about April 28, 2011, converting this case to one under Chapter 7 and authorizing applicant's continued employment in the Chapter 7 case. |
| "14" | Summary Sheets for the Chapter 7 Trustee and the Chapter 11 Trustee |

9.    **Narrative of Services**

    The detail of applicant's services in this case is set forth on Exhibits "1" and "5." Without limiting the detail provided on Exhibits "1" and "5," applicant provides the following narrative summary herein below:

    A.    **Asset Analysis ("AA"):**

    1.    Investigation Into Debtor's Assets and Transfers

    Following the Trustee's appointment, applicant communicated with the Trustee and the Debtor's former counsel regarding the facts and background of the case. Applicant reviewed and analyzed the Debtor's petition, schedules and statement of financial affairs, the disclosure statement and other pleadings and documents pertaining to the Chapter 11 phase of the Debtor's case.

1            Applicant's analysis and investigation revealed that the Debtor held interests in

2 about 50 multi-unit residential properties (the "Properties") subject to existing first trust deeds.

3 The Debtor sold the Properties pre-petition, taking back promissory notes secured by all-inclusive

4 deeds of trust, known by the acronym AITDs.  Sometimes, as part of the sale, the Debtor also took

5 back another promissory note secured by a short form deed of trust.  Under the AITD arrangement,

6 the owners of the properties collected the rents and paid the expenses, but did not pay the first trust

7 deed to the existing senior lender.  Rather, the owners were supposed to pay the Debtor on the

8 AITDs (and short form deeds of trust where existing).  The Debtor then would pay the first deed of

9 trust to the senior lender.  Applicant reviewed title documents and property profiles for each of the

10 Properties, and appraisals, where available, to discern whether there was any value in the Debtor's

11 interests in the Properties for the estate.  To the extent available, applicant reviewed the mortgage

12 statements for the Properties.

13            Based on this information, applicant prepared a detailed chart of the Properties

14 consisting of: the name of the owner; name of the senior lenders; amount of senior liens; amount of

15 monthly payments on senior liens; and appraised value.  Applicant periodically updated this chart

16 as additional information about the Properties was made available.  In addition, applicant prepared

17 and recorded with the Los Angeles County Recorder's Office a request for notice with respect to

18 each of the Properties.

19            Applicant communicated with the owners of the Properties regarding the potential

20 sale of the notes and AITDs.  See "L-4" for a discussion of the notes, AITDs and deeds of Trust

21 relating to the Properties.

22            Applicant also communicated with the senior lenders of the Properties regarding

23 payments that were delinquent or otherwise needed to be made by the Debtor.

24            Applicant drafted demand letters to those owners that did not make payments on

25 their AITDs and deeds of trust to the Trustee.  See "L-1" for a discussion of the Trustee's efforts to

26 appoint a receiver over 18 of the Properties.

27            Applicant also sought additional documents and information from the Debtor.  In

28 that regard, applicant prepared and, on April 18, 2011, filed a motion to conduct a rule 2004

1  examination and for document production of the Debtor, which the Court granted pursuant to an

2  order entered on April 21, 2011.  Applicant met with the Debtor informally, and he produced a

3  significant number of documents, including 11 boxes of files relating to the Properties and loans

4  made by the Debtor.  Applicant reviewed the Debtor's documents.  Applicant also arranged to have

5  the hard drive of the Debtor's computer imaged.  Applicant also examined the Debtor extensively

6  under oath on June 28, 2011 at his 341(a) meeting of creditors.

7        Applicant also investigated the underlying sale/transfers of the Properties to their

8  current owners by the Debtor.  In that regard, applicant prepared, and on April 29, 2011, applicant

9  filed, motions under Rule 2004 seeking the production of the escrow files relating to the Debtor's

10  property sales from Savvy Escrow and American Trust Escrow.  The Court granted the 2004

11  motions pursuant to orders entered on May 5, 2011.  Applicant prepared and subpoenas and

12  coordinated the document production with the two escrow companies.

13        Applicant also investigated transfers in and out of the Debtor's various bank and

14  brokerage accounts.  In that regard, applicant prepared, and on March 25, 2011, filed, motions

15  under Rule 2004 seeking the production of, among other records, account statements from

16  Citibank and TD Ameritrade.  Applicant also prepared and on April 5, 2011, filed a Rule 2004

17  motion seeking the production of bank statements from Pacific Premier Bank.  The Court granted

18  the Citibank, TD Ameritrade, and Pacific Premier Bank 2004 motions pursuant to orders entered on

19  April 12, 2011.  Applicant prepared the subpoenas and worked with the responding parties

20  regarding the document production.  Applicant reviewed all the responsive documents.

21        Applicant also prepared and on May 25, 2011, filed a Rule 2004 motion seeking the

22  production of account statements from Bank of America.  The Court granted the motion pursuant to

23  an order entered on June 2, 2011.  Applicant prepared the subpoena and reviewed the responsive

24  documents.

25        During the subject period, applicant also investigated transfers to the Debtor's

26  former bankruptcy attorneys Weintraub & Selth and divorce attorneys Feinberg, Mindel, Brandt &

27  Klein, LLP.  Applicant has not concluded these investigations.

28

1         2.      Dulce Ynez, Concord, and Silver Lake Properties

2             Applicant investigated other assets of the estate, including the Debtor's interest in

3    the parcels of real property commonly known as 16943 Dulce Ynez Lane, Pacific Palisades,

4    California, 915 S. Concord St. Los Angeles, California, and 3109 Silver Lake Blvd., Los Angeles,

5    California. A discussion of the Trustee's investigation and ultimate abandonment of these three

6    parcels of real property is set forth in "AD" below.

7         3.      Bass Underwriters Investigation and Settlement

8             Applicant investigated the estate's claims against Bass Underwriters, LLC ("Bass"),

9    which arose in a lawsuit captioned Savvy Property Management, LLC, Trustee Properties, LLC,

10   for itself and as Trustee of the 229 West 25th Street Trust, and David Behrend vs. United National

11   Insurance Company ("United"), Los Angeles Superior Court Case No. BC400496, wherein the

12   Debtor alleged that United was liable for breach of contract and bad faith with respect to an

13   insurance claim the Debtor made under a policy issued by United to Debtor. United, in turn, filed a

14   cross-complaint against the Debtor for rescission of the policy, following which, on or about

15   November 30, 2009, the Debtor filed a cross-complaint against Bass, its insurance broker, alleging

16   fraud, negligence, breach of fiduciary duty, among other claims.

17            Prior to the Trustee's appointment, Bass had made a $10,000 offer to settle the

18   Debtor's cross-complaint. Applicant reviewed the terms of the proposed settlement and procedural

19   background of the State Court action. After investigating the Debtor's cross-complaint, applicant

20   discussed the settlement offer with the Trustee and the Trustee determined that settlement for

21   $10,000 was in the best interests of the estate. Applicant drafted a motion to approve the

22   settlement agreement with Bass, which was filed on September, 2011 on notice and opportunity for

23   a hearing. Kevin Moda filed an objection to the motion and request for a hearing. Applicant set

24   the motion to compromise with Bass for hearing on December 13, 2011.

25        4.      Williams Probate Investigation

26            Following the Trustee's appointment, applicant learned of the probate estate of

27   Willie Mae Williams and the proposed disbursement of funds to the administrator of the Willie

28   Mae Williams' estate. Applicant reviewed the dockets for the probate estate and investigated

510793.1  25628                            8

1    whether the Debtor's estate had any claim to the distribution.  Applicant also reviewed the relief

2    from stay motion filed by the administrator and the order that the administrator obtained granting

3    relief from stay on September 29, 2010, to proceed in State Court.  Applicant concluded that relief

4    from stay was properly granted and advised the Trustee that the Debtor's estate did not have an

5    interest in the distribution.

6                        5.        Shtein 2004 Exams

7                   During the subject period, applicant learned from the Debtor that Deborah Shtein

8    ("Deborah") and Paul Shtein ("Paul") are the Debtor's sister and brother-in-law and that some of

9    the Debtor's personal property, including certain artwork (discussed in "AD" below), and, Barry

10   Bond's baseball was in Deborah's possession, custody and control.

11                  Applicant also learned through his investigation of the Properties, that Paul signed a

12   number of documents on behalf of Hernan Investments, LLC, a company wholly owned by the

13   Debtor which has engaged in numerous real estate transactions at the Debtor's behest.

14                  Accordingly, applicant prepared and on July 27, 2011, filed a motion for a 2004

15   examination of Deborah and Paul, which motion the Court granted pursuant to an order entered on

16   August 11, 2011.  Applicant prepared for and conducted the examination of Paul and Deborah,

17   which took place on August 19, 2011.

18                  During the Chapter 11 subject period, applicant expended an aggregate of 133.10

19   hours of time in this category, valued at $53,205.00.

20                  During the Chapter 7 subject period, applicant expended an aggregate of 246.30

21   hours of time in this category, valued at $100,989.50.

22             **B.        Asset Disposition ("AD"):**

23                        1.        Dulce Ynez Lane, Concord, and Silver Lake Properties

24                  Following the Trustee's appointment, applicant learned of the estate's interest in the

25   parcels of real property commonly known as 16943 Dulce Ynez Lane, Pacific Palisades, California,

26   915 S. Concord St. Los Angeles, California, and 3109 Silver Lake Blvd., Los Angeles, California.

27   Applicant reviewed the title history for each property and investigated the validity of the liens

28   thereon.  Applicant, and the Trustee, concluded that the liens on each property exceeded their value

1   and, as such, that the properties had no realizable equity for the benefit of the estate.  Accordingly,

2   applicant prepared and filed a motion to abandon the estate's interest in the properties on June 16,

3   2011, on notice and an opportunity for a hearing.  Applicant did not receive any opposition to the

4   motion within the objection period and prepared and filed a declaration re non-opposition, and

5   lodged an order granting the motion.  The Court entered an order granting the motion and

6   abandoning the properties on July 28, 2011.

7              2.      45th Street AITD

8              Following the Trustee's appointment, applicant learned of the Debtor's interest in

9   note and AITD, securing such note, on a parcel of real property commonly known as 176 East 45th

10  Street, Los Angeles, California (the "45th St. Property").

11             Applicant investigated the value of the 45th St. Property and the existing liens and

12  encumbrances thereon.  After taking into account the value of the 45th St. Property and the known

13  encumbrances thereon, the Trustee and applicant concluded that there was no equity in the 45th St.

14  Property or value in note and AITD for the benefit of the estate.  Applicant prepared and filed a

15  notice of intent to abandon the estate's interest in the note and AITD for the 45th St. Property.

16  However, Kevin Moda filed an objection to the notice of abandonment and applicant set it for

17  hearing.

18             As part of Mr. Moda's objection to the abandonment, Mr. Moda made an offer to

19  purchase the estate's interest in the note and AITD for the 45th St. Property.  Although the Trustee

20  did not consider Mr. Moda's offer sufficient, the Trustee decided to include the note and AITD in

21  an auction sale motion that applicant was also preparing.  The notice of intent to abandon was set

22  for hearing at the same time as the sale motion.  At the sale hearing, which took place on October

23  25, 2011, there were no offers received for the note and AITD on the 45th St. Property.

24  Accordingly, the Court authorized the estate's abandonment of the note and AITD.  The order

25  abandoning the note and AITD was entered on November 14, 2011.

26             3.      Books and Records

27             Following the Trustee's appointment, Elizabeth Mata turned over 91 boxes of the

28  Debtor's books and records that were in her possession (the "Mata Boxes") to the Trustee.  The

1  Trustee's accountants Clifton Gunderson LLP, are in possession of the Mata Boxes and have

2  prepared an inventory thereof.

3        Illana Behrend also turned over 24 boxes of books and records relating to the Debtor

4  that were in her possession (the "Illana Boxes") to the Trustee.  Ms. Behrend claims that the Illana

5  Boxes are her personal property and that at no time did they ever belong to the Debtor or the

6  Debtor's estate.  The Trustee's accountants are also in possession of the Illana Boxes and have

7  prepared an inventory thereof.

8        Following the Trustee's review of the Mata and Illana Boxes, the Trustee concluded

9  that there was no benefit to the estate of keeping and maintaining them, as they were no longer

10  necessary for the Trustee's administration and they were burdensome to the estate and are of

11  inconsequential value.   The Trustee requested and applicant prepared a motion to abandon the

12  boxes and release the Illana Boxes to Illana Behrend and release the Mata Boxes to the Debtor.

13  The motion was filed on October 5, 2011, on notice and an opportunity for a hearing.  Mr. Moda

14  objected to the motion, and applicant set the motion for hearing, which will take place on

15  December 13, 2011.

16        4.    Artwork and Vehicles

17        Following the Trustee's appointment and applicant's review of the Debtor's

18  schedules, applicant learned of the estate's interest in a 1999 Mercedes Benz CLK 320, 2006

19  Mercedes C320, and 2009 Audi Q7 (collectively, the "Vehicles"). The Trustee investigated and

20  determined that after liens and exemptions, there was no realizable equity in the Vehicles for the

21  estate.  In addition, although the 2006 Mercedes C320 is scheduled as property of the Debtor's

22  estate, and title to the vehicle may still be in the name of the Debtor or Illana Behrend, the Debtor

23  testified to the Trustee at his 341(a) meeting of creditors that the vehicle was a gift to Illana

24  Behrend's mother in 2006.

25        The assets of the Debtor's estate may include four paintings consisting of two water

26  colors by Itzchak Tarkay, an unsigned woodblock print attributed to Salvador Dali, and an oil on

27  canvas by Sandro Negri (collectively, the "Artwork").  The Artwork was turned over to applicant

28  by the Debtor's sister Deborah Shtein at her 2004 examination in applicant's office.  See "AA"

1   above.  Applicant arranged for an initial valuation of the Artwork from an art industry appraiser;

2   however, the appraiser advised applicant that the Artwork had only decorative value and did not

3   have any fine art value.

4            After taking into account that there was no value in the Vehicles or Artwork for the

5   estate, the Trustee requested that applicant seek an abandonment thereof.  Applicant prepared and

6   filed a notice of intent to abandon the estate's interest in the Vehicles and Artwork.  However, Mr.

7   Moda also filed an objection to the notice of abandonment.  Applicant set the abandonment for

8   hearing, which will take place on December 13, 2011.

9            No services were rendered during the Chapter 11 subject period in this category.

10           During the Chapter 7 subject period, applicant expended an aggregate of 54.30

11  hours of time in this category, valued at $19,441.00.

12

13           **C.    Case Administration ("CA"):**

14           Applicant performed legal services in the general administration of this case.  These

15  included communications with the Trustee, the Trustee's administrator, the Trustee's accountants,

16  and creditors, including responding to inquiries and/or requests for information regarding the

17  Debtor's books and records, tax returns, and or information relating to the Debtor's interests in the

18  Properties.  Other tasks involving more than one activity code are contained here, as are services in

19  complying with the Guidelines of the Office of the United States Trustee.

20           In addition, following the Trustee's appointment, the Trustee became aware that he

21  was not receiving all of the mail from the Debtor relating to the Debtor's various interests in the

22  Properties, including property tax bills, payments on the deeds of trust, and correspondence from

23  the owners.  Accordingly, applicant prepared and on or about March 23, 2011, filed an application

24  for order shortening time and a motion seeking authorization for the Trustee to forward all of the

25  mail in the name of the Debtor and his related businesses and trusts to the Trustee.  The Court

26  granted the application for order shortening time and set the motion for hearing on April 7, 2011.

27  The Debtor opposed the motion and applicant prepared a reply brief in response.  Applicant also

28  appeared at the hearing on the motion to forward the mail, at which time the Court granted the

1  motion.  Applicant prepared the order granting the motion and the Court entered the order on April

2  20, 2011.

3          Following the Trustee's appointment and applicant's initial review of the Debtor's

4  schedules, statement of financial affairs, and what operating reports had been filed by the Debtor in

5  the Chapter 11 case, applicant advised the Trustee that the Debtor was not capable of reorganizing

6  in his Chapter 11 case.  Applicant prepared a motion to convert the Debtor's Chapter 11 case to one

7  under Chapter 7, which was set for hearing on April 21, 2011.  Appearances at the hearing were

8  waived pursuant to the Court's tentative ruling, and the Court entered an order granting the motion

9  to convert on April 28, 2011, effective as of March 24, 2011.

10          Applicant also investigated and reviewed potential claims against the Debtor for

11 denial of the Debtor's discharge under § 727 of the Code.  Given the short time period within

12 which applicant had to complete its investigation for the Trustee, and applicant's need for

13 additional documents from the Debtor and various other individuals, applicant prepared a

14 stipulation to continue the August 29, 2011, deadline for an initial 90 days.  The Debtor did not

15 sign the stipulation.  Thereafter, applicant prepared a motion on notice and opportunity for a

16 hearing, to continue the § 727 deadline for the Trustee and the Office of the United States Trustee.

17 There was no objection to the motion and applicant filed its declaration re non-opposition and

18 lodged an order granting the motion.  The order granting the motion and was entered on August 22,

19 2011, and the deadline was extended to November 28, 2011.

20          Applicant, the Trustee, and the Office of the United States Trustee are still

21 investigating the Debtor's transfer to Stephen Coaloa and other business transactions between the

22 Debtor and Mr. Coaloa (discussed in "L-10" below), accordingly, applicant prepared and filed on

23 notice and opportunity for a hearing, a second motion extending the time for the Trustee and the

24 Office of the United States Trustee to file complaints objecting to the Debtor's discharge under 11

25 U.S.C. § 727 for 90 days from November 28, 2011, to and including February 28, 2012.  Applicant

26 anticipates filing a declaration re non-opposition and lodging an order granting the motion when

27 the time to object to the motion has passed.

28

510793.1  25628                                    13

1    As the § 727 deadline was only extended for the Trustee and the Office of the

2  United States Trustee, two creditors, Hayley Stuppel and the Lisitsa Law Corporation, filed

3  complaints against the Debtor seeking to determine the dischargeablity of their debt and/or deny

4  the Debtor's discharge.  Applicant reviewed the complaints.

5    During the Chapter 11 subject period, applicant expended an aggregate of 25.60

6  hours of time in this category, valued at $8,639.00.

7    During the Chapter 7 subject period, applicant expended an aggregate of 32.00

8  hours of time in this category, valued at $12,645.50.

9

10    **D.**    **Claims Objections ("CL"):**

11    Applicant made a preliminary review of claims.  Applicant will complete a claims

12  review and file objections, to the extent appropriate.

13    Applicant responded to inquiries from Illana Behrend, the Debtor's estranged

14  spouse, relating to her request for immediate payment of her domestic support obligation.

15  Applicant reviewed Ms. Behrend's request and advised the Trustee accordingly.  Thereafter, the

16  Debtor filed a motion to compel the Trustee to pay Ms. Behrend's support obligation and the

17  attorney's fees of the Debtor's divorce lawyer.  Applicant filed an opposition to the Debtor's

18  motion and appeared at the hearing thereon, which took place on August 23, 2011.  Applicant also

19  reviewed an opposition filed by Zions National Bank to the Debtor's motion, and prepared a

20  response thereto.  At the hearing, the Court granted the Debtor's motion in part and authorized the

21  Trustee to pay the sum of $4,001 to Ms. Behrend and $12,500 to Ms. Behrend's divorce lawyer, as

22  a priority claim for a domestic support obligation.  The Court denied the Debtor's request for

23  payment of his divorce lawyer's fees and costs.  The order granting the Debtor's motion in part was

24  entered on September 9, 2011.

25    During the Chapter 11 subject period, applicant expended an aggregate of 2.90

26  hours of time in this category, valued at $1,313.00.

27    During the Chapter 7 subject period, applicant expended an aggregate of 23.30

28  hours of time in this category, valued at $10,041.50.

510793.1  25628                                14

1    **E.    Fee/Employment Applications ("FA"):**

2          Applicant prepared and filed its own employment application, the related notice, and

3    the subsequent declaration regarding the non-opposition to the employment application.  Applicant

4    also drafted and lodged the proposed order thereon.

5          Applicant is preparing this interim fee application.  Because the fee application

6    requirements of the United States Trustee and Local Bankruptcy Rules require a detailed

7    categorization of the nature of services and the time spent for each category of services, it was

8    necessary that applicant carefully categorize and describe its services.  Fees and costs incurred in

9    connection therewith will be disclosed in a later fee application.

10          During the Chapter 11 subject period, applicant expended an aggregate of 2.80

11    hours of time in this category, valued at $819.00.

12          During the Chapter 7 subject period, applicant expended an aggregate of 4.70 hours

13    of time in this category, valued at $1,753.50.

14

15    **F.    Appointment Of The Receivers ("L-1"):**

16          Upon the Trustee's appointment, applicant became aware that the owners of the

17    following 18 of properties had stopped paying the Debtor and the Trustee on their AITDs and

18    deeds of trust, and were in default thereon:

19          1.        1663 W. 11th Pl., Los Angeles, California;

20          2.        9504 S. San Pedro St., Los Angeles, California;

21          3.        210 W. 43rd Place, Los Angeles, California;

22          4.        1941 Magnolia Ave., Los Angeles, California;

23          5.        4509 Willow Brook Ave., Los Angeles, California;

24          6.        5201 S. Hoover St., Los Angeles, California;

25          7.        8108 S. Hoover St., Los Angeles, California;

26          8.        505 W. 62nd St., Los Angeles, California;

27          9.        1645 W. 48th St., Los Angeles, California;

28          10.       259 E. 41st Pl, Los Angeles, California;

1    11.    606 W. Vernon Ave., Los Angeles, California;

2    12.    4227 S. Hoover St., Los Angeles, California;

3    13.    2614 West Blvd., Los Angeles, California;

4    14.    1706 Arlington Ave., Los Angeles, California;

5    15.    6307-6311 8th Ave., Los Angeles, California;

6    16.    1114-1120 E. 67th St., Los Angeles, California;

7    17.    2921 Francis Ave., Los Angeles, California; and

8    18.    437 W. 50th St., Los Angeles, California.

9    Applicant reviewed the title history for each of the properties, including reviewing

10   each of the underlying promissory notes, AITDs and deeds of trust, the assignment of rents

11   provisions. Applicant also researched the Trustee's remedies in relation to the owners non-

12   payment of their obligations under the notes, AITDs, and deeds of trust. Applicant advised the

13   Trustee to seek the appointment of a receiver or receivers over the properties so that the receivers

14   could take control of the properties, manage them, collect the rents, pay the operating expenses,

15   including the first deeds of trust, and, if necessary, sell the properties.

16   Applicant prepared a complaint for judicial foreclosure and appointment of an

17   individual receiver over each of the 18 properties, which applicant filed on April 21, 2011,

18   commencing an adversary proceeding captioned Mastan v. 2921 Francis Avenue, LLC, et al., Adv.

19   Pro. No. 1:11-ap-01316-VK. Applicant also prepared an emergency motion for appointment of the

20   receivers, order to show cause why receivers should not be confirmed, temporary restraining order,

21   and order to show cause why a preliminary injunction should not be granted, which was also filed

22   on April 21, 2011. The Court set a hearing date of April 28, 2011, on the Trustee's emergency

23   motion to appoint the receivers. Applicant received and reviewed two oppositions to the Trustee's

24   motion. At the hearing, at which applicant appeared, applicant was notified that defendants Four

25   Doves Investments, LLC, Four Doves Properties, LLC, 1663 W. 11th Place, LP, 211 E. 55th Street,

26   LP, and LA REIT, Inc., which collectively held title to 13 of the properties, had filed Chapter 11

27   bankruptcy petitions. Accordingly, the Trustee did not proceed with the appointment of a receiver

28   over the 13 Properties owned by those entities. A discussion of the time incurred in relation to

510793.1  25628                              16

1  these bankruptcy filings is set forth under "L-2" below.  The Court granted the Trustee's motion

2  and appointed receivers over the remaining five properties.   The Court also issued an order to

3  show cause why the receivers should not be confirmed and set a hearing date of May 11, 2011, for

4  a hearing on the issuance of a preliminary injunction.

5          Applicant prepared five orders, in a recordable form, granting the motion,

6  appointing a receiver over each of the five properties, and issuing an order to show cause why

7  receiver should not be confirmed, which the Court entered on April 28, 2011.

8          On May 11, 2011, applicant appeared at the hearing on the Court's order to show

9  cause and the Court confirmed the appointment of the receivers and issued a preliminary injunction

10  against the owners of the properties.  The order was entered on May 13, 2011.

11          Following the receivers' appointment, applicant communicated with the receivers

12  and provided them with copies of the appointment orders, information relating to the properties,

13  and the owners of the properties.  Applicant also responded to inquiries from the receivers relating

14  to the properties.

15          With the approval of the Court, applicant sold the Trustee's interest in the notes,

16  AITDs and deeds of trust securing the notes for all 18 of the properties.  A discussion of the time

17  incurred in relation to the sale of the properties is set forth under "L-4" below.

18          Applicant prepared requests to terminate the receiverships over 1706 Arlington

19  Ave., Los Angeles, California, 6307-6311 8th Ave., Los Angeles, California, and 1114-1120 E.

20  67th St., Los Angeles, California, which requests were granted.  Kevin Moda filed an objection to

21  the termination of the receivership over 1706 Arlington Ave., which objection the Court overruled

22  at a hearing on August 10, 2011.

23          The receiver for 2921 Francis Ave., Los Angeles, California and 437 W. 50th St.,

24  Los Angeles, California, prepared requests to terminate those two receiverships.  Applicant

25  reviewed the requests and communicated with the receiver accordingly.  The Court granted the

26  requests and the final two receiverships were terminated pursuant to orders entered on October 17,

27  2011.

28          No services were rendered during the Chapter 11 subject period in this category.

510793.1  25628                                17

1    During the Chapter 7 subject period, applicant expended an aggregate of 276.90

2  hours of time in this category, valued at $103,020.50.

3

4    **G.    Bankruptcies Filed By Owners Of The Properties ("L-2"):**

5    As discussed in "L-1" above, on April 28, 2011, Four Doves Investments, LLC,

6  Four Doves Properties, LLC, 1663 W. 11th Place, LP, 211 E. 55th Street, LP, and LA REIT, Inc.,

7  filed voluntary Chapter 11 petitions.  The debtors filed the bankruptcy cases in the Los Angeles

8  Division.  Upon learning of the bankruptcy filings, applicant contacted the Court's clerk and

9  notified the clerk of the case numbers and the location of the filings.  Thereafter, the Court entered

10  orders transferring the five cases from the Los Angeles Division to the San Fernando Valley

11  Division and assigning each case to this Court.

12    Thereafter, applicant drafted a motion to dismiss each of the bankruptcy cases as

13  bad faith filings.  However, before applicant could file its motion, on May 2, 2011, the Court

14  entered an order to show cause why the cases should not be dismissed and set a hearing on its order

15  to show cause  for May 19, 2011.  Applicant prepared and filed a statement in support of the

16  dismissal of each of the cases, and appeared at the hearing on the Court's order to show cause.

17    Applicant also drafted motions for rule 2004 examinations of each of the five

18  debtors and their principals.  On May 6, 2011, the Court granted the motions and authorized the

19  Trustee to take the examinations.  Applicant prepared subpoenas for the 2004 examinations.

20    Prior to the hearing on the Court's order to show cause, the debtors filed motions to

21  use cash collateral and motions to employ the Law Office of Bruce J. Tackowiak as their general

22  bankruptcy counsel, which were also set for hearing on May 19, 2011.  Applicant filed oppositions

23  in each of the cases to the applications to employ the Law Office of Bruce J. Tackowiak as it

24  appeared the Mr. Tackowiak had no Chapter 11 bankruptcy experience and there were conflicts

25  between the four debtors.  Applicant reviewed the oppositions filed by several secured creditors to

26  the debtors' use of cash collateral.  Applicant appeared at the hearing on May 19, 2011, at which

27  time the Court continued the hearings on the orders to show cause, cash collateral motions, and

28

1  employment applications to May 26, 2011, to allow the debtors time to properly serve their

2  motions and applications.

3           Applicant appeared at the continued hearing on May 26, 2011.  At the continued

4  hearing the Court dismissed the bankruptcy cases of Four Doves Properties, 1663 11th Place, LP

5  and 211 E. 55th St., LP, denied Mr. Tackowiak's employment, and denied the cash collateral

6  motions in those three cases.  The remaining matters were continued to June 14, 2011.  Applicant

7  reviewed the orders dismissing the bankruptcy cases of Four Doves Properties, 1663 11th Place, LP

8  and 211 E. 55th St., LP.

9           Ultimately, the bankruptcy cases of Four Doves Investments, LLC and LA REIT,

10  Inc., were dismissed with a 180 day bar.

11           No services were rendered during the Chapter 11 subject period in this category.

12           During the Chapter 7 subject period, applicant expended an aggregate of 46.00

13  hours of time in this category, valued at $22,388.00.

14

15           **H.    Sale Of The 25th Street Property ("L-3"):**

16           Following the Trustee's appointment, applicant evaluated the estate's interest in the

17  parcel of real property commonly known as 239 25th Street, Los Angeles, California (the "25th St.

18  Property").

19           Prior to the Trustee's appointment, the 25th St. Property was the subject of a Court

20  approved sale, which took place on January 7, 2011, in the Debtor's Chapter 11 case.  At the

21  hearing the Court approved the sale to the Menlo Family Trust for $1,067,600.  However, the

22  Menlo Family Trust did not consummate the sale and, prior to entry of an order in connection with

23  the Court's January 7, 2011, ruling, the Debtor entered into a stipulation with the Menlo Family

24  Trust, whereby it was agreed that the back-up bidder, Rafael Iryami and Katrin Kerendian

25  (collectively, "Iryami"), would purchase the 25th St. Property for the sum of $1,052,600.

26           The Debtor's sale motion identified a number of liens against the 25th St. Property,

27  including the lien of Mahvash Mazgani, as trustee of the Mahvash Mazgani Family Trust

28  ("Mazgani"), which appeared in second position against the 25th St. Property ("Mazgani Lien") .

510793.1  25628                          19

1   There were also purported liens junior to the Mazgani Lien, including but not limited to the

2   purported liens held by Danco, Inc., and DCT Burnet Townhomes, LLC.

3          A further hearing was held on February 17, 2011, in connection with the sale and

4   the Court approved the sale to Iryami for $1,052,600, which sale was approved pursuant to an order

5   entered on March 24, 2011.  Applicant reviewed the order approving the sale of the 25th St.

6   Property prior to entry thereof and advised the Trustee in relation thereto.  Applicant prepared a

7   declaration for the Trustee to sign in support of entry of the order approving the sale of the 25th St.

8   Property to Iryami.

9          The sale order provided that the sale was free and clear of liens, including the

10  Mazgani Lien and any liens junior thereto, and that the liens were removed from the 25th St.

11  Property and to the net sale proceeds, subject to further order of the Court.   The sale order also

12  authorized the payment of the Debtor's quarterly Chapter 11 United States Trustee fees from the

13  sale proceeds.   A discussion of the time incurred in relation to the Mazgani Lien is set forth under

14  "L-11" below.

15         Following the approval of the sale, applicant reviewed the closing documents and

16  final escrow instructions.  Thereafter, the sale of the 25th St. Property closed resulting in sale

17  proceeds from which various payments were made from escrow, including payments to the Trustee

18  of $94,846.04 on or about April 20, 2011, and $3,281.50 on or about July 5, 2011.

19         In connection with the original sale to the Menlo Family Trust, the Menlo Family

20  Trust paid a deposit of $41,000 (the "Deposit") to the Debtor's counsel, Blake Lindemann.  On

21  February 17, 2011, the Menlo Family Trust filed a motion to release of the Deposit.

22         Following the Trustee's appointment, applicant prepared an opposition to the Menlo

23  Family Trust's motion to release the Deposit and appeared at the hearing on the motion, which took

24  place on March 29, 2011.  At the hearing, the Court denied the motion.  The order denying the

25  motion was entered on April 18, 2011. However, on or about April 11, 2011, before the Court

26  could enter an order denying the motion, Mordeci Notis as trustee of the Menlo Family Trust filed

27  a notice of appeal regarding the denial of the release motion, which appeal has been referred to the

28

510793.1 25628                                    20

1    United States District Court.  Applicant continues to monitor the docket in the District Court

2    appeal.  The parties have not yet filed their briefs in the appeal

3            With regard to the Deposit held by Mr. Lindemann, applicant prepared a stipulation

4    between the Trustee and Mr. Lindemann for turnover of the Deposit to the Trustee.  On March 16,

5    2011, the Court entered an order approving the stipulation.  Thereafter, Mr. Lindemann turned the

6    Deposit over to the Trustee.

7            During the Chapter 11 subject period, applicant expended an aggregate of 12.10

8    hours of time in this category, valued at $7,026.00.

9            During the Chapter 7 subject period, applicant expended an aggregate of 21.10

10   hours of time in this category, valued at $11,468.50.

11

12          I.      **The Sale/Settlements Re AITDs And Notes  ("L-4"):**

13          Following applicant's investigation into the Properties, demand for payment from

14   the owners on the notes, AITDs, and deeds of trust, securing such notes, and appointment of

15   receivers over several of the Properties, applicant received inquiries and offers from a number of

16   the property owners and others seeking to purchase the estate's interest in the notes, AITDs and

17   deeds of trust, securing such notes, on the Properties.

18          Applicant filed seven sale motions, which sold, with a couple of exceptions,

19   essentially all of the estate's interests in the notes, AITDs, and deeds of trust, securing such notes,

20   on the Properties.   A discussion of each sale is set forth below.

21              1.      The Motion To Approve Sales To Raul Mena And George Ivakhnik

22          Applicant received an offer from Raul Mena to purchase the estate's interest in the

23   notes, AITDs and deeds of trust, securing such notes, for 505 W. 62nd St., Los Angeles, California,

24   259 E. 41st Pl., Los Angeles, California, 606 W. Vernon, Los Angeles, California, 1645 W. 48th,

25   Los Angeles, California, 5201 S. Hoover St., Los Angeles, California, 8108 S. Hoover St., Los

26   Angeles, California, 535 S. Lorena St., Los Angeles, California, 801 W. 97th St, Los Angeles,

27   California, and 4318 S. Avalon, Los Angeles, California (collectively, the "Mena Properties").  At

28   about that time, applicant also received an offer from George Ivakhnik to purchase the estate's

interest in 4509 Willow Brook, Los Angeles, California, 1941 Magnolia Ave, Los Angeles, California, 211 E. 55th St., Los Angeles, California, 4227 S. Hoover, Los Angeles, California, 2614 West Blvd., Los Angeles, California, 1663 W. 11th Pl., Los Angeles, California, 9504 S. San Pedro, Los Angeles, California, and 210 W. 43rd Pl., Los Angeles, California (the "Ivakhnik Properties"). Applicant negotiated the terms of the sale agreements with Mr. Mena and Mr. Ivakhnik at length. Ultimately, Mr. Mena agreed to purchase the estate's interest in the Mena Properties for $129,960 and Mr. Ivakhnik agreed to purchase the estate's interest in the Ivakhnik Properties for $99,250. After lengthy and difficult negotiations, applicant drafted the sale agreements with both Mr. Ivakhnik and Mr. Mena.

Thereafter, on May 19, 2011, applicant filed a motion to approve the sales of the Mena Properties and Ivakhnik Properties. The sale motion also included a request to authorize the Trustee, to the extent necessary, to sign documentation to withdraw or expunge certain Notice of Cancellation/Rescission of Quit Claim (the "Notices of Rescission") that were recorded with the Los Angeles County Recorder's Office on or about April 20, 2011, against the Properties, purporting to rescind the transfer of the Properties made by the Debtor. These Notices of Rescission were signed by the trustee of Earthwise, LLC and/or Trustee Properties, LLC, both of which are entities wholly owned by the Debtor.

On June 14, 2011, a hearing took place on the sale motion. At the hearing on the sale motion, at which an over bidder appeared, the Court confirmed the sale of the estate's interest in the notes, AITDs and deeds of trust, securing such notes, for the Mena Properties to Mr. Mena for $129,960 and the sale of the Ivakhnik Properties to Jen Properties, LLC ("Jen") for $109,250. The order confirming the sale was entered on June 17, 2011. Applicant received the full purchase at the time of the sale hearing.

Applicant prepared and delivered assignments of the AITDs and deeds of trust purchased and the withdrawals of the Notices of Rescission to the buyers. Thereafter the sales closed.

1           Following the closing of the sale to Jen, an issue arose, wherein Jen sought to

2  modify the terms of the June 17, 2011 order.  A discussion of Jen's efforts to modify the terms of

3  the June 17, 2011 order are contained in "L-7" below.

4           2.     The Motion To Approve Sale To Earl and Catherine Diaz

5           Applicant received an offer from Earl and Catherine Diaz to purchase the estate's

6  interest in the note and AITD securing such note for 706 North Soto Street, Los Angeles, California

7  (the "Soto Street Property").  Applicant negotiated the terms of the sale agreement with Mr. Diaz.

8  Ultimately, Mr. and Mrs. Diaz agreed to purchase the estate's interest in the Soto Street Property

9  for $25,000.  The agreement further provided for a settlement relating to the note and AITD against

10  807 West 41st Drive, Los Angeles, California (the "41st Drive Property"), which Mr. Diaz also

11  owned, wherein the Trustee would retain funds previously paid by Diaz to the Debtor and the

12  Trustee on account of the 41st Drive Property.

13           Thereafter, on May 31, 2011, applicant filed a motion to approve the sale of the Soto

14  Street Property and to approve the compromise with Mr. and Mrs. Diaz.  The sale motion also

15  included a request to authorize the Trustee to withdraw the Notices of Rescission recorded against

16  the two properties.

17           On June 21, 2011, a hearing took place on the sale motion.  At the hearing on the

18  sale motion, at which an over bidder appeared, the Court confirmed approved the compromise with

19  Mr. and Mrs. Diaz relating to the 41st Drive Property, and approved the sale of the estate's interest

20  in the note and AITD securing such note for the Soto Street Property to Mr. and Mrs. Diaz for

21  $51,000.  The order confirming the sale was entered on June 29, 2011.  The full purchase price was

22  delivered at the hearing.

23           Applicant prepared and delivered assignments of the AITDs and deeds of trust

24  purchased and the withdrawals of the Notices of Rescission to the buyers.  Thereafter the sales

25  closed.

26

27

28

1        3.     <u>The Motion To Approve Sales To Raul Mena, Christine and Jonny</u>

2 <u>Thompson, and Settlement Agreement With Monica Mihell</u>

3       Applicant received an offer from Raul Mena to purchase the estate's interest in the

4 notes, AITDs and deeds of trust, securing such notes, for 606 W. Vernon, Los Angeles, California,

5 1645 W. 48th, Los Angeles, California (collectively, the "Additional Mena Properties").  At about

6 that time, applicant also received an offer from Christine and Jonny Thompson to purchase the

7 estate's interest in  971 W. 42nd Pl., Los Angeles, California, (the "W. 42nd Pl. Property").

8 Applicant negotiated the terms of the sale agreements with Mr. Mena and Mr. Thompson at length.

9 Ultimately, Mr. Mena agreed to purchase the estate's interest in the Additional Mena Properties for

10 $90,000 and Mr. and Mrs. Thompson agreed to purchase the estate's interest in the W. 42nd Pl.

11 Property for $13,500.

12       Applicant also received an offer from Monica Mihell to enter into a settlement

13 regarding 815 N. Soto St., Los Angeles, California, (the "N. Soto St. Property") for the sum of

14 $800.  The Trustee accepted Ms. Mihell's offer.

15       Thereafter, applicant drafted the sale and settlement agreements and, on July 5,

16 2011, applicant filed a motion to approve the sales.  The sale motion, with respect to Mr. Mena and

17 the Additional Mena Properties, also sought to reconvey the notes and AITDs on the Additional

18 Mena Properties as against the cross-collateralized properties included therein.  On July 13, 2011,

19 Kevin Moda filed an objection to the sale motion.  Applicant prepared a reply brief, which was

20 filed on July 19, 2011.  At the hearing on July 26, 2011, at which applicant appeared, the Court

21 approved the compromise with Ms. Mihell for $800.  With respect to the rest of the motion, the

22 Court continued the hearing to August 10, 2011, so that the Trustee could file an appendix of all the

23 underlying notes, AITDs, and deed of trust, securing such notes, that were being sold as part of the

24 sale.  Applicant prepared and filed the appendix along with an amended notice of sale, noting the

25 continued hearing date.

26       At the continued hearing on August 10, 2011, the Court approved the sale motion

27 and confirmed the sale of the estate's interest in the notes, AITDs and deeds of trust, securing such

28 notes for the Additional Mena Properties to Mr. Mena for $90,000 and the note and AITD securing

1   such note for the W. 42nd Pl. Property to Mr. and Mrs. Thompson for $13,500.  The order

2   confirming the sale was entered on August 12, 2011.  Applicant received the full purchase price

3   from the buyers.  The order approving the sale was entered on August 12, 2011.

4           Applicant prepared and delivered assignments of the AITDs and deeds of trust

5   purchased and the withdrawals of the Notices of Rescission to the buyers.  Applicant also prepared

6   and delivered partial reconveyances with respect to the cross-collateralized properties.  Thereafter

7   the sales closed.

8           4.    The First Antoon Sale Motion

9           Applicant received an offer from Sherif Antoon to purchase the estate's interest in

10  the notes, AITDs and deeds of trust, securing such notes for 6308 - 6311 8th Ave., Los Angeles,

11  California, 1706 Arlington Avenue, Los Angeles, California, 241 East 64th St., Los Angeles,

12  California, 1114 E. 67th St., Los Angeles, California, and 722 Bonnie Brae St., Los Angeles,

13  California (collectively, the "Antoon Properties").  Ultimately, Mr. Antoon agreed to purchase the

14  estate's interest in the Antoon Properties for $39,000.

15          Applicant drafted the sale and settlement agreement and, on July 12, 2011, applicant

16  filed a motion to approve the sale.  The sale motion, with respect to Mr. Antoon and the Antoon

17  Properties, sought to reconvey the notes and AITDs on the Antoon Properties as against the cross-

18  collateralized properties included therein.  On July 26, 2011, Jen filed a late objection to the sale

19  motion.  At the hearing on July 26, 2011, at which applicant appeared,  the Court continued the

20  hearing to August 10, 2011, so that the Trustee could file an appendix of all the underlying notes,

21  AITDs, and deed of trust, securing such notes, that were being sold as part of the sale.  Applicant

22  prepared and filed the appendix along with an amended notice of sale, noting the continued hearing

23  date.

24          At the continued hearing on August 10, 2011, at which applicant also appeared, Jen

25  appeared and overbid.  However, Mr. Antoon ultimately was the highest bidder and the Court

26  approved the sale motion and confirmed the sale of the estate's interest in the notes, AITDs and

27  deeds of trust, securing such notes, for the Antoon Properties to Mr. Antoon for $94,500.

28

510793.1 25628                          25

1   Applicant received the full purchase price from Mr. Antoon at the hearing.  The order approving

2   the sale was entered on August 12, 2011.

3           Applicant prepared and delivered assignments of the AITDs and deeds of trust

4   purchased and the withdrawals of the Notices of Rescission to Mr. Antoon.  Applicant also

5   prepared and delivered partial reconveyances with respect to the cross-collateralized properties.

6   Thereafter the sale closed.

7         5.     The Sale Of The Estate's Interest In 2841 W. 8th Street

8           Applicant initially received an offer from Union Discounts, the owner of 2841 W.

9   8th St., Los Angeles, California (the "8th St. Property"), to purchase the estate's interest in the note

10  and AITD securing such note for $30,000.

11          Applicant prepared the sale agreement.  However, after significant discussions about

12  the terms, Union Discounts backed away from its offer and would not enter into the sale agreement.

13  Thereafter, applicant received an offer from Fred Leeds to purchase the estate's interest for

14  $10,000.  Mr. Leed's offer was made as part of his overall purchase of the 8th St. Property from

15  Union Discounts.  The Trustee accepted the offer and applicant drafted the sale and settlement

16  agreement and, on September 9, 2011, filed a motion to approve the sale.

17          At the sale hearing on October 25, 2011, at which applicant appeared, the Court

18  approved the sale motion to Mr. Leeds for $10,000.  The sale was not subject to overbid.  Applicant

19  received the full purchase price from Mr. Leeds.  The order approving the sale was entered on

20  November 14, 2011.  The sale has not yet closed.

21        6.     The Second Antoon Sale Motion

22          Applicant received an offer from Sherif Antoon to purchase the estate's interest in

23  the notes, AITDs and deeds of trust, securing such notes for 2921 Francis Avenue, Los Angeles,

24  California and 437 50th St., Los Angeles, California (collectively, the "Additional Antoon

25  Properties").  After some negotiations, Mr. Antoon agreed to purchase the estate's interest in the

26  Antoon Properties for $4,000.

27          Applicant drafted the sale and settlement agreement and, on September 20, 2011,

28  applicant filed a motion to approve the sale.  The sale motion, with respect to Mr. Antoon and the

1  Additional Antoon Properties, sought to reconvey the notes and AITDs on the Additional Antoon

2  Properties as against the cross-collateralized properties included therein.  On October 14, 2011,

3  Kevin Moda filed a late objection to the sale motion.

4          Prior to the hearing on the sale motion, applicant prepared an amended sale

5  agreement with Mr. Antoon and prepare and filed an amendment to the sale motion.  Applicant

6  sought to clarify in the amendment that Trustee is reconveying the cross-collateral rights to both

7  the AITD and short form deed of trust on 437 50th St., and is not releasing any claims or interest

8  the Trustee otherwise has in the cross-collateralized properties.  Kevin Moda filed an objection to

9  the motion.  Applicant filed a reply in response to Mr. Moda's objection.  At the hearing on

10  October 25, 2011, at which applicant appeared, the Court granted the motion and confirmed the

11  sale of the estate's interest in the notes, AITDs and deeds of trust, securing such notes, for the

12  Additional Antoon Properties to Mr. Antoon for $4,000.  Applicant received the full purchase price

13  from Mr. Antoon.  The order approving the sale was entered on November 14, 2011.  The sale has

14  not yet closed.

15          7.    The Trustee's Motion For Sale To Highest Bidder

16          Finally, applicant prepared a motion to sell the estate's interest in the notes, AITDs

17  and deeds of trust, securing such notes, for 1151 W. 11th Place, Los Angeles, California (the "11th

18  Place Property"), 176 E. 45th Street, Los Angeles, California (the "E. 45th St. Property"), 2623 N.

19  Barranca Street, Los Angeles, California (the "Barranca Property"), 345 West 45th Street, Los

20  Angeles, California (the "W. 45th St. Property"), and 3904 Gibraltor, Los Angeles, California (the

21  "Gibraltor Property"), to the highest bidder.  Kevin Moda filed an objection to the motion.

22  Applicant filed a reply in response to Mr. Moda's objection.  At the hearing on October 25, 2011,

23  at which applicant appeared, the Court granted the motion and held an auction for each of the

24  properties.  After conducting the auction, the Court confirmed the sale of the estate's interest in the

25  notes, AITDs and deeds of trust, securing such notes relating to the: 11th Place Property to Sherif

26  Antoon for $2,000; the Barranca Property to Elizabeth Mata for $2,000; the Gibraltor Property to

27  REGR, LLC for $6,000; and the W. 45th St. Property to Sherif Antoon for $2,000.  There were no

28

1  bidders for the note and AITD for the E. 45th St. Property, which the Court authorized the Trustee

2  abandon.  The Trustee has received the full purchase price from the buyers.

3          The order approving the sales was entered on November 14, 2011.  The sales have

4  not yet closed.

5          During the Chapter 11 subject period, applicant expended an aggregate of .120

6  hours of time in this category, valued at $503.50.

7          During the Chapter 7 subject period, applicant expended an aggregate of 437.10

8  hours of time in this category, valued at $178,235.00.

9          **J.     Sunset Creations ("L-5"):**

10          Following the Trustee's appointment, applicant learned of a transfer of the Debtor's

11  25% interest in Sunset Creations, LLC, to his brother Kerrin Behrend for $100,000.  Sunset

12  Creations, LLC, owns a parcel of real property commonly known as 17030 Sunset Boulevard, Los

13  Angeles, California (the "Sunset Property").  Sunset Creations is owned partially by Stephen

14  Coaloa ("Coaloa"), and the $100,000 was deposited into Mr. Coaloa's bank account at the Debtor's

15  direction.  A discussion of the Trustee's investigation relating to Mr. Coaloa and the $100,000

16  transfer is set forth in "L-10" below.

17          Applicant reviewed the title records and recorded liens against the Sunset Property,

18  as well as the Debtor's appraisal of the Sunset Property.  Applicant is currently investigating

19  whether the Trustee has an avoidance power claim against Kerrin Behrend to avoid the transfer of

20  the Debtor's 25% interest in Sunset Creations, LLC.  Applicant is also investigating whether the

21  Trustee can avoid any of the junior liens against the Sunset Property.  Applicant also received

22  several offers from interested parties to purchase the estate's interest in the Sunset Property and/or

23  avoidance power claims.  Applicant advised the Trustee with respect to such offers.

24          During the Chapter 11 subject period, applicant expended an aggregate of .60 hours

25  of time in this category, valued at $327.50.

26          During the Chapter 7 subject period, applicant expended an aggregate of 4.10 hours

27  of time in this category, valued at $2,296.00.

28

510793.1  25628                                        28

**K.**   **Yevgeniya Lisitsa And The Lisitsa Law Corporation ("L-6"):**

Following the Trustee's appointment, applicant learned of a complaint filed on or about April 19, 2010, by Illana Behrend in the Los Angeles County Superior Court, case no. BC436050, entitled <u>Illana Behrend v. Kerrin Behrend, LA Reit, Inc., et al.</u> (the "Complaint"), seeking to recover damages based on the alleged fraudulent transfer of assets of the Debtor and Illana Behrend.  Illana Behrend was represented by her counsel, Yevgeniya Lisitsa and the Lisitsa Law Corporation, in filing the Complaint.

Prior to the Trustee's appointment, on or about May 19, 2010, the Debtor filed a motion for an order to show cause why Yevgeniya Lisitsa and Illana Behrend should not be found in contempt for willfully violating the automatic stay and for damages under 11 U.S.C. §362(k) (the "Contempt Motion") for filing the Complaint.  See "L-8" for a discussion of the estate's claims against Illana Behrend in relation to the Contempt Motion.  On or about June 3, 2010, the Complaint was removed by the Debtor to this Court.  The Debtor's Contempt Motion also sought damages relating to Ms. Lisitsa's sending of an e-mail post-petition, on April 6, 2010, to Summer Saad and David Behrend requesting payment of a pre-petition claim for attorney's fees and reimbursed costs.

On or about August 26, 2010, the Court entered an order holding Ms. Lisitsa in contempt for willfully violating the automatic stay and setting hearing on actual punitive damages. The only issue for the Court left to consider was the amount of damages.

Applicant investigated the estate's claims against Ms. Lisitsa and the amount of damages to the estate relating to the Complaint and the Contempt Motion, including communicating with the Debtor's counsel.  Applicant advised the Trustee regarding the estate's claims and the amount of any such damages.  Applicant also reviewed and advised the Trustee regarding a settlement offer that applicant received from Ms. Lisitsa's malpractice carrier.

Ultimately, the Trustee accepted the offer from Ms. Lisitsa's malpractice carrier and applicant drafted a written settlement agreement between the Trustee and Ms. Lisitsa. The agreement provided that Ms. Lisitsa shall pay the Trustee $60,000 in exchange for full and complete satisfaction of and release from any and all claims and obligations, whether known or

1  unknown, that the Trustee and Lisitsa have against each other relative to the Complaint and the

2  Contempt Motion.

3        Applicant drafted a motion to approve the settlement agreement with Ms. Lisitsa,

4  which was filed on July 26, 2011, on notice and an opportunity for a hearing.  Applicant did not

5  receive any opposition to the motion within the objection period and prepared and filed a

6  declaration re non-opposition, and lodged an order granting the motion.  The Court entered an

7  order granting the motion and approving the compromise on August 22, 2011.  Thereafter, Ms.

8  Lisitsa paid the full $60,000 to the Trustee.

9        In addition to above claims, applicant is also investigating the estate's potential

10  malpractice claims that Debtor has alleged against Ms. Lisitsa and the Lisitsa Law Corporation.

11       Applicant has reviewed documents provided by the Debtor and the Debtor's former

12  counsel in support of such claims.  Applicant also prepared and filed a motion for a 2004

13  examination of Ms. Lisitsa and the Lisitsa Law Corporation, which the Court granted pursuant to

14  an order entered on October 5, 2011.  Applicant prepared subpoenas for the examinations and has

15  been in discussions with counsel for Ms. Lisitsa regarding Ms. Lisitsa's appearance at the 2004

16  examinations and the production of documents in response to the subpoenas and Court order.  In

17  that regard, applicant prepared a stipulation with counsel for Ms. Lisitsa fixing the time for the

18  examinations and limiting the production of certain documents.  The Court approved the stipulation

19  pursuant to an order entered on November 7, 2011.   The examinations are currently set for

20  December 8, 2011.

21       During the Chapter 11 subject period, applicant expended an aggregate of 4.50

22  hours of time in this category, valued at $1,831.00.

23       During the Chapter 7 subject period, applicant expended an aggregate of 59.90

24  hours of time in this category, valued at $23,171.50.

25

26

27

28

510793.1 25628                               30

1    **L.    JEN, Inc.'s State Court Receiver Motion And Motion to Modify Sale**

2    **Order ("L-7"):**

3    As discussed in "L-4" above, on June 17, 2011, the Court entered an order

4    confirming the sale of the estate's interest in the notes, AITDs and deeds of trust, securing such

5    notes, for Ivakhnik Properties to Jen for $109,250. According to the terms of the sale motion and

6    underlying sale agreements, the Trustee was obligated to deliver assignments of the AITDs and

7    deeds of trust to Jen no later than 5 court days after the sale order became a final order (i.e. 14 days

8    after entry). The earliest date that the Trustee could consummate the sale and deliver the

9    assignments to Jen was July 5, 2011.

10    However, Jen jumped the gun, and in direct violation of the automatic stay, sought

11    the appointment of a receiver in Superior Court over properties in which it knew the Trustee still

12    held an interest. Notwithstanding the fact that the Trustee had not yet delivered the assignments of

13    the AITDs and deeds of trust to Jen, and the sale to Jen had not yet closed because the AITDs and

14    deeds of trust had not yet been delivered, on June 29, 2011, Jen obtained an order from the

15    Superior Court for the appointment of a receiver over all the properties for the AITDs and deeds of

16    trust that it purchased and also against properties which Jen believed were cross-collateralized by

17    the AITDs that it had purchased. The properties over which the receiver was appointed are as

18    follows:

19         1.    211 East 55th Street, Los Angeles, California;

20         2.    4227 South Hoover Street, Los Angeles, California;

21         3.    2614 West Boulevard, Los Angeles, California;

22         4.    210 West 43rd Street, California;

23         5.    4509 Willow Brook Street, California;

24         6.    1941 Magnolia Avenue, California;

25         7.    1663 West 11th Place, California;

26         8.    9504 South San Pedro Street, California;

27         9.    606 West Vernon Avenue, Los Angeles, California;

28         10.    259 East 41st Place, Los Angeles, California;

1        11.    1645 West 48th Street, Los Angeles, California;

2        12.    4318 South Avalon Blvd., Los Angeles, California;

3        13.    801 West 97th Street, Los Angeles, California;

4        14.    535 South Lorena Avenue, Los Angeles, California;

5        15.    537 South Lorena Avenue, Los Angeles, California;

6        16.    543 South Lorena, Los Angeles, California; and

7        17.    722 South Bonnie Brae Street, Los Angeles, California.

8              On June 30, 2011, upon learning of Jen's appointment of the receiver, applicant sent

9 e-mail correspondence to Jen's counsel and the receiver advising that the actions taken by Jen and

10 the receiver were in direct violation of the automatic stay and requesting that Jen and the receiver

11 immediately cease and desist from violating the automatic stay.  Jen, its counsel, and the receiver

12 each disregarded the notification that they were in violation of the automatic stay.

13              On July 1, 2011, Jen filed an emergency application, requesting clarification of the

14 Court's June 17, 2011 sale order and asking the Court for authority to permit the state court

15 receiver to remain in place, which was set for hearing on July 26, 2011.  Applicant reviewed Jen's

16 application for clarification and prepared an opposition thereto.  Applicant also reviewed the

17 opposition filed by George Ivakhnik and the reply brief filed by Jen.

18              At the hearing on July 26, 2011, at which applicant appeared, the Court denied Jen's

19 motion and ordered that only the AITDs and/or deed of trust were sold pursuant to the Court's June

20 17, 2011 order, and any underlying promissory notes which those AITDs and deeds of trust secured

21 were not sold pursuant to the Court's June 17, 2011 order.  Applicant prepared the order denying

22 Jen's motion, which the Court entered on June 28, 2011.  Applicant recorded the entered order with

23 the Los Angeles County Recorder's Office.

24              On July 29, 2011, Jen filed an emergency ex parte motion to reconsider the Court's

25 July 26, 2011, ruling, which was set for hearing on August 12, 2011.  On August 3, 2011, applicant

26 filed a statement in support of Jen's emergency motion to reconsider the Court's July 26, 2011,

27 ruling.  On August 9, 2011, Jen filed a reply in support of its motion, which applicant reviewed.

28 At the hearing on August 12, 2011, the Court granted Jen's motion to reconsider and ruled that the